COURT 
OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT 
WORTH
 
NO. 
2-01-298-CV
  
WAFFLE 
HOUSE, INC.                                                            APPELLANT
 
V.
  
THE 
TRAVELERS INDEMNITY                                                   APPELLEES
COMPANY 
OF ILLINOIS AND
FEDERAL 
INSURANCE COMPANY
  
------------
 
FROM 
THE 17TH DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. 
INTRODUCTION
        This 
is a suit to enforce two insurance companies’ obligations under a general 
liability policy and an umbrella insurance policy respectively. The trial court 
granted summary judgment for the insurers, stating that exclusions in the 
policies applied to bar the claims against the insured from coverage. We affirm 
the trial court’s judgment in part. We reverse and render partial summary 
judgment in part and remand for further proceedings.
II. 
FACTUAL SUMMARY
        Therese 
Scribner (“Scribner”), a former Waffle House, Inc. (“Waffle House”) 
employee, and her personnel recruiting company Resource Recruiters, Inc. 
(“Resource”) sued Waffle House in federal court for multiple claims 
including defamation, disparagement, and tortious interference with contractual 
relations. In an amended complaint, Scribner alleged that Waffle House 
executives Dave Theobold (“Theobold”) and Skip Nau (“Nau”) defamed her 
by telling Grandy’s, a Waffle House competitor and a client of Resource, that 
she was discharged for poor performance, that she was vindictive, that she was 
trying to entice people to leave Waffle House, and that she had a personal 
vendetta against Waffle House. Scribner also alleged in an amended complaint 
that Waffle House caused Grandy’s to sever business relations with Resource by 
disparaging Scribner.
        At 
the time of the alleged defamatory conduct, Waffle House was covered under a 
comprehensive general liability insurance policy issued by The Travelers 
Indemnity Company of Illinois (“Travelers”) and a commercial excess umbrella 
policy issued by Federal Insurance Company (“Federal”). Both policies 
contain provisions entitled Coverage A and Coverage B. Waffle House does not 
claim that it is entitled to coverage under the Coverage A provision of the 
Travelers policy. The Coverage B provision covers losses resulting from personal 
injuries, which includes defamation.
        The 
Coverage A provision of the Federal policy provides coverage once underlying 
insurance policies, such as the Travelers policy, are exhausted, and the 
Coverage B provision provides coverage once the losses exceed a predetermined 
amount of money, the retained limit, that Waffle House agrees to pay before 
Federal becomes obligated to pay. Both the Travelers and Federal policies 
contain exclusions that relate to employment-related activities, and the Federal 
policy contains an exclusion that bars losses resulting from the intentional 
conduct of the insured.
        In 
a letter dated July 7, 1994, Travelers conveyed its intention to provide a 
defense for Waffle House in the defamation cause of action. Federal likewise 
stated in a separate letter that Waffle House’s commercial excess umbrella 
policy covered any damages in excess of the underlying policy limits. Both 
letters also included statements that reserved each insurer’s rights under the 
insurance policies.
        After 
a bench trial, federal district judge Jerry Buchmeyer entered a substantial 
damage award in favor of Scribner and Resource that included monetary damages 
for defamation, and in an opinion exceeding two hundred pages, the judge 
condemned Waffle House for what he determined was the “severe and pervasive 
sexual harassment” of Scribner. 

 Stating 
 that neither the factual findings of the judge nor the allegations in 
 Scribner’s complaint supported any claim covered by the policy, both 
 Travelers and Federal subsequently denied coverage. Waffle House then brought 
 this suit to enforce the insurance contracts.
        Both 
Travelers and Federal moved for summary judgment, arguing that their respective 
policies did not provide coverage under the facts of this case. Specifically, 
Travelers argued that there were no injuries or damages caused by an 
“occurrence,” the policy excluded coverage for injuries or damages expected 
or intended from the standpoint of the insured, and the policy excluded injuries 
arising from certain employee-related practices and activities by the insured. 
Waffle House argued in its response and also in its motion for partial summary 
judgment that (1) Travelers cannot rely upon the argument that intentional 
conduct is not covered because there is no requirement that an “occurrence” 
take place under Coverage B; (2) the employment-related practices exclusion is 
unambiguous and does not bar coverage because neither Scribner nor Resource was 
an employee at the time of the alleged defamation, and the alleged defamation 
was not employment-related; and (3) alternatively, the exclusion is ambiguous 
and, therefore, must be interpreted in favor of coverage.         Federal 
argued in its motion for summary judgment that its policy does not cover events 
or damages arising out of Waffle House’s employment relationships or 
intentional acts. Federal also argued that the Coverage A provision in its 
policy is not triggered at all unless and until the underlying Travelers policy 
has been exhausted.
        Waffle 
House responded to Federal’s motion by arguing that (1) with respect to 
Coverage A, Federal has failed to meet its burden of establishing that there is 
no coverage available under the underlying policy for defense and indemnity; (2) 
with respect to Coverage A, Federal’s coverage obligations are triggered 
regardless of Travelers’ failure to pay the underlying limits; (3) with 
respect to Coverage B, Federal has failed to meet its burden of establishing 
that there was no occurrence that triggered coverage for defense and indemnity; 
(4) with respect to Coverage B, Federal has failed to meet its burden of 
establishing that there was no personal injury that triggered coverage for 
defense and indemnity; and (5) with respect to Coverages A and B, Federal has 
failed to meet its burden of establishing that the employment-related 
discrimination exclusion bars coverage for defense and indemnity.
        The 
trial court granted the insurers’ motions for summary judgment on the specific 
ground that each policy contained exclusions that prevent coverage. The trial 
court’s order stated that “[b]ased upon the motions, evidence, briefs, and 
arguments, the Court concludes that the exclusions relied upon by 
Travelers and Federal apply.” [Emphasis added.] The trial court also denied 
Waffle House’s motions for partial summary judgment; however, the trial court 
ordered Travelers to pay Waffle House for the reasonable and necessary legal 
fees and expenses incurred by Waffle House as a result of the underlying 
litigation for the period from July 1, 1994 to March 7, 1997. Waffle House 
acknowledged the receipt of this payment.
III. 
LEGAL ANALYSIS
        Waffle 
House argues in seven issues that the trial court improperly denied its motion 
for partial summary judgment and granted both Travelers’ and Federal’s 
motions for summary judgment. Issues one, two, and four pertain to Travelers’ 
duty to defend Waffle House and the application of an exclusion in Travelers’ 
policy. Issues three, five, six, and seven address similar issues under 
Federal’s policy.
A. 
Standard of Review
        In 
a summary judgment case, the issue on appeal is whether the movant met its 
summary judgment burden by establishing that no genuine issue of material fact 
exists and that the movant is entitled to judgment as a matter of law. 
 

 The 
 burden of proof is on the movant, and all doubts about the existence of a 
 genuine issue of material fact are resolved against the movant. 

 Therefore, 
 we must view the evidence and its reasonable inferences in the light most 
 favorable to the nonmovant. 


        In 
deciding whether there is a material fact issue precluding summary judgment, all 
conflicts in the evidence are disregarded and the evidence favorable to the 
nonmovant is accepted as true. 

 Evidence 
 that favors the movant's position will not be considered unless it is 
 uncontroverted. 

 The 
 summary judgment will be affirmed only if the record establishes that the 
 movant has conclusively proved all essential elements of the movant's cause of 
 action or defense as a matter of law. 


        A 
defendant is entitled to summary judgment if the summary judgment evidence 
establishes, as a matter of law, that at least one element of a plaintiff’s 
cause of action cannot be established. 

 The 
 defendant as movant must present summary judgment evidence that negates an 
 element of the plaintiff’s claim. 

 Once 
 the defendant produces sufficient evidence to establish the right to summary 
 judgment, the burden shifts to the plaintiff to come forward with competent 
 controverting evidence raising a genuine issue of material fact with regard to 
 the element challenged by the defendant. 


        When 
both parties move for summary judgment and the trial court grants one motion and 
denies the other, the reviewing court should review both parties’ summary 
judgment evidence and determine all questions presented. 

 The 
 reviewing court should render the judgment that the trial court should have 
 rendered. 


B. 
Construction of Insurance Contracts
        Generally, 
the rules of contract construction apply to insurance policies. 

 Accordingly, 
 our primary goal is to ascertain the true intent of the parties as expressed in 
 the insurance policy. 

 An 
 insurance policy should be reviewed in its totality, and every sentence, 
 clause, and word should be given meaning. 


        When 
an insurance carrier intends to exclude coverage, the exclusionary provision 
must be clearly expressed and must not be ambiguously worded. 

 “Both 
 the insured and the insurer are likely to take conflicting views of coverage, 
 but neither conflicting expectations nor disputation is sufficient to create 
 an ambiguity.” 

 When 
 construing unambiguous contracts, the terms used are given their plain, 
 ordinary, and generally accepted meaning. 


 C. 
Travelers’ Policy
        In 
issues one, two, and four, Waffle House argues that Travelers had a duty to 
defend Waffle House in the Scribner litigation that extended through the 
appellate process and that Travelers’ “Employee-Related Practices” 
exclusion does not apply to the claims against Waffle House by Scribner and 
Resource. We agree.
        1. 
The Duty to Defend Defined
        An 
insurer’s duty to defend its insured is determined according to the “eight 
corners” rule, which requires that we compare the allegations in the petition 
or complaint filed against the insured and the insurance policies. 
 

 The 
 complaint must allege facts within the scope of coverage; otherwise, the 
 insurer will not be legally bound to provide a defense for the insured. 
 

 When 
 the allegations are reviewed to determine whether a liability insurer has a 
 duty to defend its insured, a liberal interpretation in favor of the insured 
 should be given. 


        2. 
The Travelers’ Exclusion
        Since 
the exclusions potentially bar coverage for a defense, indemnification, or both, 
we first review Travelers’ employment-related exclusion. Travelers argued in 
its motion for summary judgment that the “Employee-Related Practices” 
exclusion applies to exclude coverage for every claim asserted by Scribner and 
Resource against Waffle House. Travelers contends that the exclusion applies to 
bar coverage for “personal injuries” arising out of Scribner’s 
termination.
        The 
exclusion in Travelers’ policy provides that the policy “does not apply to . 
. . ‘personal injury’ arising out of any . . . termination of 
employment . . . [c]oercion, demotion, evaluation, reassignment, discipline, 
defamation, harassment, humiliation, discrimination, or other employment-related 
practices, policies, acts or omissions.” [Emphasis added.] Because the 
exclusion clearly expresses the intent of the parties, we hold that Travelers’ 
exclusion is not ambiguous. 

 We 
 must now review the facts of this case to determine if the trial court 
 correctly applied the exclusion.
        Travelers 
argued in its motion for summary judgment that the provision excludes coverage 
for injuries “arising out of employment-related acts such as . . . 
defamation.” According to Travelers, the allegations of post-employment 
defamation in Scribner’s complaint clearly arose out of employment-related 
acts.
        Whether 
the exclusion applies depends on whether the defamatory remarks made by the 
Waffle House executives arose out of Scribner’s termination from Waffle House. 
Under the facts of this case, we hold that it does not.
        The 
Texas Supreme Court recently stated that the phrase “arise out of” should be 
interpreted as requiring a “but-for” causal relationship. 

 Furthermore, 
 the phrase should be broadly construed. 

 However, 
 “a causal connection must exist” between the injury and the events excluded 
 by the policy. 


        In 
Lindsey, a boy climbed through the back window of a locked stationary 
pickup in order to retrieve his clothes. As he was maneuvering through the 
window, he accidently pulled the trigger of a loaded gun, and Lindsey, who was 
in a car parked next to the pickup, was wounded. After settling with the boy’s 
parents for the limits of their insurance policy, Lindsey attempted to file an 
underinsured-motorist claim against the insurance carrier of the owner of the 
car in which he was sitting when he was wounded. The insurance carrier argued 
that the injury did not “arise out of” the use of a motor vehicle. Referring 
to the causal connection, the court held that Lindsey’s injury arose out of 
the use of the truck as a matter of law. 


        Therefore, 
if Waffle House’s liability to Scribner does not “arise out of” a causal 
connection or relation between the defamatory statements and Scribner’s 
employment, then Travelers owes Waffle House a duty of indemnification. 
 

 The 
 facts of this case clearly demonstrate that no causal connection exists.
        According 
to Judge Buchmeyer’s opinion, the defamatory statements made by Theobold and 
Nau were lies intended to prevent the exodus of employees from Waffle House to 
Grandy’s. Waffle House stated in its pleadings in the underlying suit that the 
purpose of the calls was “to inform Grandy’s of the situation in an attempt 
to halt the apparent pirating of their employees.” Judge Buchmeyer also found 
that, consistent with these statements, in one of the conversations during which 
the defamatory remarks were made, Theobold threatened Robert McGregor, who is 
Grandy’s Director of Human Resources, by stating that “‘if you don’t 
stop hiring Waffle House employees’ through Therese Schribner, ‘we’re 
going to set a bounty’ and ‘pay a signing bonus’ for ‘hiring away 
Grandy’s employees.’” Travelers even concedes in its brief on page 
twenty-three that the ”defamatory statements were made to Grandy’s to avoid 
the loss of Waffle House employees.” When statements such as these are coupled 
with the fact that the defamatory statements were made over two years after 
Scribner’s termination, the context of the statements clearly shows 
that they arose out of Waffle House’s attempt to prevent its employees from 
leaving the company and not out of Scribner’s termination. 

 In 
 other words, no causal relationship exists between the defamation and 
 Scribner’s employment.
        A 
review of the cases cited by both Waffle House and Travelers further provide 
credence to our construction of the exclusion. First, Waffle House argues that HS 
Services, Inc. is directly on point. 

 In 
 HS Services, Inc., an insured sued its insurer to obtain a defense and 
 indemnity in connection with a defamation judgment awarded to the insured’s 
 former employee. 

 The 
 defamation in that case occurred three months after the employee was 
 discharged. 

 Like 
 Scribner, the employee in HS Services, Inc. had formed a business that 
 was competing with his former employer and was soliciting customers. 
 

 The 
 insurer denied coverage, relying upon the same exclusion at issue in the 
 present case. The Ninth Circuit reversed the trial court’s summary judgment 
 for the insurer, holding that the context of the insured’s defamatory 
 statements was to protect the insured in the marketplace and was not “clearly 
 employment-related.” 


        Travelers 
acknowledged in its motion for summary judgment that the sole purpose of the 
defamatory statements by the Waffle House executives was to “prevent Waffle 
House from losing employees.” Therefore, the statements were made in the 
context of protecting Waffle House in the marketplace. 


        Travelers 
cites several cases applying Texas law for the proposition that the exclusion 
should apply to bar coverage in this case. Each of these cases is 
distinguishable on one or more grounds. First, Travelers argues that Pennsylvania 
National Mutual Casualty Insurance Co. v. Kitty Hawk Airways, Inc., 
 

 from 
 the Fifth Circuit, supports its contention that the exclusion provision applies 
 to the facts in this case because Scribner suffered personal injuries from 
 statements made about her concerning her termination. We distinguish Kitty 
 Hawk on its facts. The defamatory letter in that case was sent in response 
 to a routine employment inquiry by Northwest Airlines, requesting information 
 about Pollard’s employment at Kitty Hawk. In other words, Kitty Hawk’s 
 defamatory letter was clearly linked to Pollard’s employment at Kitty Hawk. 
 In the present case, however, no causal relationship exists between Waffle 
 House’s defamatory statement and Scribner’s employment by Waffle House. The 
 defamatory remarks were aimed at stopping the exodus of employees from Waffle 
 House and were made over two years after Scribner was terminated.
        Furthermore, 
Kitty Hawk’s exclusion stated that the policy does not cover 
“personal injur[ies] sustained by any person as a result of an offense directly 
or indirectly related to the employment of such person by the named 
insured.” 

 The 
 exclusion in Kitty Hawk describes the causal connection by utilizing the 
 words “directly or indirectly.” 

 The 
 Travelers exclusion does not contain such language.
        Travelers 
cites Old Republic Insurance Co. v. Comprehensive Health Care Associates, 
Inc. for the proposition that the exclusion that covers any claim arising 
out of the employment relationship between the insured and any of its employees 
is broad enough to cover virtually any claim arising out of the employment 
relationship. 

 Old 
 Republic was a suit to enforce the insurer’s duty to defend its insured. 
 

 Accordingly, 
 only the allegations in the plaintiffs’ underlying petitions were reviewed. 
 

 The 
 plaintiffs in that case alleged that the defendant used his position of 
 authority in the workplace to force unwanted sexual attention on the plaintiffs 
 by insinuating that the plaintiffs would receive neither pay raises nor their 
 paychecks unless the plaintiffs responded to the defendant’s advances. 
 

 The 
 facts of Old Republic clearly establish an employment-related causal 
 connection between the conduct excluded and the injury suffered.
        Travelers 
also argues that the law in other jurisdictions is consistent with its 
interpretation of Texas law. Travelers argues that Frank & Freedus v. 
Allstate Insurance Co. involves the interpretation of an exclusion that is 
identical to the one at issue in this case. 

 The 
 California court held that defamatory statements made in reference to the 
 termination of an employee were directly related to and in the context of the 
 underlying plaintiff’s employment. 

 The 
 court imposed a requirement that a causal link exist between the employee and 
 the defamatory statement by emphasizing the context of the statement. 
 

 Specifically, 
 the court stated that “[t]he defamation here was clearly employment-related. 
 The statement was made in the context of Caprow’s employment and its 
 content is directed to Caprow’s performance during employment.” 
 

 If 
 we apply the law in Frank & Freedus to the facts before us, even 
 though some of the content of the defamatory statements pertained to 
 Scribner’s employment at Waffle House, the context of the statements 
 clearly had nothing to do with her employment.
        Based 
on the facts and supporting case law, we hold that the employment-related 
exclusion in the Travelers policy does not apply under the facts of this case. 
We sustain Waffle House’s fourth issue to the extent it argues that the 
employment-related exclusion does not bar coverage.
        3. 
Travelers’ Duty to Defend
        Because 
we hold that the employment-related exclusion in the Travelers policy does not 
bar coverage, we now address Travelers’ argument that none of the allegations 
in Scribner’s and Resource’s pleadings are within the scope of coverage 
under the policy, thus invoking Travelers’ duty to defend Waffle House. 
Travelers does not contest that Scribner’s defamation claims are for 
“personal injury” as defined by the policy; instead, Travelers argues that 
the employee-related exclusion excuses both the duty to defend and the duty to 
indemnify. Scribner and Resource, however, alleged in their fourth amended 
complaint under the heading “NINTH CAUSE OF ACTION AGAINST DEFENDANT: 
DEFAMATION” that
  
On 
or about May 18, 1992, Grandy’s, Inc. was again contacted this time by Dave 
Theobold, a Regional Manager for Defendant. Mr. Theobold reiterated the 
allegation that Plaintiff Scribner was targeting Defendant employees and also 
alleged that Plaintiff Scribner had a personal vendetta against Defendant.
  
        . 
. . .
 
Defendant 
agents made said statements negligently, maliciously, and/or with knowledge that 
said statements were false or with reckless disregard for their truth.
  
The 
allegation pertaining to Theobold’s defamation contains no reference to 
Scribner’s employment. Liberally construing the pleadings against Travelers 
and without reference to the truth or falsity of the allegations, 

 Scribner’s 
 complaint alleges injuries that are covered by Travelers’ policy. 
 Accordingly, we hold that Travelers had a duty to defend Waffle House.
        4. 
End of the Duty to Defend
        Waffle 
House further argues in its second issue that Travelers’ duty to defend Waffle 
House extends through the appellate process. Travelers relies on its argument 
that none of the allegations in the underlying complaint was covered by the 
policy.
        Travelers’ 
insurance policy provides that Travelers’ duty to defend ends when the 
applicable policy limits are exhausted by qualifying payments. The policy fails 
to mention any other situation under which Travelers’ duty to defend would 
end. We conclude that the policy unambiguously states the conditions that 
terminate coverage. 

 We 
 hold that Travelers’ duty to defend Waffle House continues through the 
 appellate process until the applicable limits of the policy are exhausted 
 according to the terms of the policy. We sustain Waffle House’s first and 
 second issues.
        5. 
Travelers’ Duty to Indemnify
        Waffle 
House also argues in its fourth issue that because the employee-related 
exclusion does not apply and because Scribner’s and Resource’s injuries 
arise out of the defamatory statements, Travelers has a duty to indemnify Waffle 
House for Scribner’s and Resource’s damages caused by the tortious 
interference with Resource’s contract with Grandy’s and the defamation of 
Scribner. Waffle House also argues that Travelers’ duty to indemnify Waffle 
House includes the obligation to pay the punitive damages. Waffle House raised 
the indemnity issue in its supplemental motion for partial summary judgment.
        An 
insurer’s duty to indemnify is separate and distinct from the insurer’s duty 
to defend. 

 Facts 
 established at trial that fall within the purview of the policy invoke an 
 insurer’s duty to indemnify its insured. 

 The 
 duty only rises after the insured has been adjudicated to be legally 
 responsible for damages in a lawsuit. 


        Travelers’ 
policy provides that Travelers “will pay those sums that the insured becomes 
legally obligated to pay as damages because of ‘personal injury.’” The 
policy further defines personal injury to mean injury “arising out of . . . [o]ral 
or written publication of material that slanders or libels a person.” Thus, 
the policy provides coverage for defamatory statements that are not excluded by 
another provision in the policy.
        We 
now determine whether any of Judge Buchmeyer’s findings fall within the 
coverage of Travelers’ policy. 

 He 
 awarded damages relevant to this case totaling $1,293,192 as follows:
        Intentional 
Interference (Resource)
                lost 
income                                      24,188

        Defamation 
(Scribner)
                lost 
income                                     
 -Nominal-
                mental 
anguish                                  
119,500

        Punitive 
Damages For Tortious
        Interference 
and defamation 
        (Both 
Scribner & Resource, Jointly)               1,149,504

        Judge 
Buchmeyer found that Waffle House tortiously interfered with Resource’s 
contract with Grandy’s and awarded Resource $24,188 in lost income. He 
concluded “that the only reason that Grandy’s terminated its contract 
with Resource Recruiters was the malicious conduct and lies of Waffle House’s 
Skip Nau and Dave Theobold.” Resource’s claim that Waffle House tortiously 
interfered with Resource’s contract with Grandy’s “arose out of” or 
“resulted from” the defamatory comments of Nau and Theobold. We hold that 
Travelers has a duty to indemnify Waffle House for Resource’s lost profits 
caused by Waffle House’s tortious interference with the Grandy’s contract.
        Judge 
Buchmeyer also awarded Scribner $119,500 for the mental anguish she suffered as 
a result of the defamation. We hold that these damages “arose out of” or 
“resulted from” the defamatory statements and are covered by the policy; 
thus, Travelers has a duty to indemnify Waffle House for the mental anguish 
damages.
        Finally, 
Judge Buchmeyer awarded punitive damages for both the contractual interference 
and defamation causes of action. Concluding that the circumstances surrounding 
both of the causes are identical and the punishment of Waffle House for its 
defamation of Scribner would have the same purpose as the punishment of Waffle 
House for its tortious interference with the Grandy’s agreement, Judge 
Buchmeyer issued a joint award to Scribner and Resource for punitive damages. We 
hold that the punitive damages “arose out of” or “resulted from” Waffle 
House’s defamatory statements and Travelers has a duty to indemnify Waffle 
House for those damages. We sustain the remainder of Waffle House’s fourth 
issue.
D. 
Federal’s Insurance Policy
        Waffle 
House next argues in issues three, five, six, and seven respectively that 
Federal owes Waffle House a duty to defend that continues through the appellate 
process, Federal’s “Employment-Related Discrimination” exclusion does not 
apply to the claims by Scribner and Resources, Federal’s policy does not 
condition indemnity upon exhaustion of the Travelers policy, and Federal’s 
policy provides coverage for “occurrences” resulting from personal injuries, 
including personal injuries caused by the insured’s intentional conduct.
        1. 
Federal’s Exclusions
        Because 
Federal raised several exclusions in its motion for summary judgment and because 
those exclusions, if applicable, would bar coverage for both a defense and 
indemnity, we address those exclusions first. In its fifth and seventh issues, 
Waffle House argues that neither Federal’s “Employment-Related 
Discrimination” exclusion nor the exclusion for intentional conduct as it 
applies to personal injuries bars coverage for Scribner’s defamation claims. 
Federal raised the issue in its motion for summary judgment, arguing that 
Scribner did not allege and Judge Buchmeyer did not find a “personal injury” 
within the meaning of the policy.
        Federal 
argued in its motion for summary judgment that Waffle House is not covered by 
its policy under either the Coverage A or B provisions because the policy 
specifically excludes coverage for intentional “personal injury.” The 
Coverage A provision of Federal’s policy states as follows:
COVERAGE
 
Coverage 
A—Excess Follow Form Liability Over Claims Made or Occurrence Coverage
 
We 
will pay, on behalf of an insured, 
damages in excess of the total Limits of Liability of Underlying Insurance as 
stated in the Schedule of Underlying Insurance. The terms and conditions of the 
Scheduled Underlying Insurance are with respect to Coverage A made a part of 
this policy, except for:
 
. 
. . .
  
b. 
any renewal agreement, and any exclusion or limitation attached to this policy 
by endorsement or included in the Exclusions applicable under Coverage A and B 
of this policy.
 
With 
respect to a. and b. above, the provisions of this policy will apply.
 
With 
respect to all Scheduled Underlying Policies, the injury or damage must be 
caused by an occurrence which takes place on or after the Effective Date. 
[Emphasis added.]
 
The 
Coverage A provision applies only to injuries or damages caused by an occurrence. 
The policy provides that an
Occurrence
 
Means:
 
a. 
with respect to bodily injury or property 
damage liability, an event, including continuous and repeated exposure to 
substantially the same general harmful conditions neither expected nor 
intended from the standpoint of the insured. 
All such exposure to substantially the same general conditions will be 
considered as arising out of one occurrence.
 
b. 
with respect to personal injury, an 
offense committed during the policy period which results in personal 
injury. All damages arising out of such exposure to substantially the 
same general conditions will be considered as arising out of one occurrence. 
[Emphasis added.]

        The 
policy also states that Federal will pay according to the terms of the Coverage 
B provision when the “liability is imposed on the insured 
by law or assumed by the insured under an 
insured contract because of personal 
injury or advertising injury to which 
this coverage applies.” [Emphasis added.] The policy’s definition of 
“occurrence” with respect to “personal injuries” does not exclude 
expected or intended conduct as it does in section a., which addresses bodily 
injury and property damage. Accordingly, both the Coverage A and B provisions 
cover liability resulting from personal injuries caused by intentional 
conduct.
        Federal’s 
policy defines personal injury as follows:
Personal 
Injury
Means:
a. 
false arrest, false imprisonment, wrongful eviction, wrongful entry, wrongful 
detention or malicious prosecution;
 
b. 
libel, slander, defamation of character, or invasion of the rights of privacy, 
unless arising out of advertising activities;
 
c. 
humiliation or discrimination EXCEPT:
(1) 
when arising out of the willful violation of a statute;
(2) 
when committed by or with knowledge or consent of the insured.

According 
to c. above, Federal’s policy includes an exception applicable to both 
Coverages A and B that bars coverage for personal injury resulting in 
humiliation.
        Federal 
argues that Scribner and Resource alleged and Judge Buchmeyer found that the 
defamatory statements resulted in humiliation; therefore, according to Federal, 
the policy excludes any coverage for Waffle House in the
Scribner 
litigation. Scribner alleged in her fourth amended complaint that the defamatory 
remarks caused her “to be held up to public humiliation . . . and have caused 
both she and her company great personal and professional embarrassment and 
shame.” Likewise, Judge Buchmeyer found that the mental anguish Scribner 
suffered as a result of the defamatory statements “went far beyond hurt, 
anger, and frustration to manifest itself in the form of humiliation and 
stress.”
        Federal’s 
exception clearly states the circumstances to which the policy does not apply; 
therefore, we hold that the policy is not ambiguous. 

 Furthermore, 
 because Scribner alleged and Judge Buchmeyer found that Theobold’s and 
 Nau’s defamatory comments caused Scribner humiliation, we hold that those 
 claims for humiliation and the resulting mental anguish damanges are excluded 
 from coverage under both the Coverage A and B provisions of Federal’s policy. 
 We overrule Waffle House’s seventh issue to the extent the issue addresses 
 Federal’s humiliation exception for personal injuries.
        However, 
Scribner and Resource also alleged damages for lost profits. We must therefore 
review Federal’s exclusion entitled “EMPLOYMENT RELATED DISCRIMINATION 
EXCLUSION.” The exclusion states as follows:
THIS 
POLICY IS SUBJECT TO THE FOLLOWING EXCLUSION
With 
respect to Coverages A and B:
it 
is agreed that this policy does not apply to . . . personal 
injury . . . for, based on, attributable to, arising out of, resulting 
from or in any manner related to any actual or alleged termination of any 
employee, any actual or alleged failure to promote or advance any employee, or 
any actual or alleged failure to hire any applicant for employment.
 
        Waffle 
House initially argues that the title of the exclusion clearly illustrates that 
it is designed to preclude coverage for “discrimination” related to 
employment and that therefore the exclusion does not apply to this case. The 
policy, however, states that “[t]he titles of the varied paragraphs of this 
policy and endorsements . . . are inserted solely for convenience or reference 
and are NOT to be deemed in any way to limit or affect the provisions to which 
they relate.” Accordingly, our analysis must extend past the title of the 
exclusion.
        Waffle 
House next argues that the summary judgment evidence does not establish as a 
matter of law that Federal’s exclusion applies to defamatory statements made 
two years after Scribner’s termination. Waffle House also argues that no 
summary judgment evidence establishes as a matter of law that the exclusion 
applies to the defamation of Resource.
        The 
language in this exclusion varies slightly from that used in the Travelers 
exclusion in that this exclusion utilizes several different phrases such as 
“for, based on, attributable to, arising out of, resulting from or in any 
manner related to” to describe the causal relationship required to come within 
the purview of the exclusion. However, Federal’s use of phrases that vary the 
degree of the causal nexus does not merit an outcome different from our analysis 
of the Travelers exclusion.
        Federal 
states in its brief that “[t]he relationship between the defamers and the 
defamed is additional evidence that plaintiff’s allegations were properly 
excluded under the employment-related discrimination exclusion.” We agree that 
the relationship illustrates how the exclusion should apply to the facts of this 
case. The relevant relationship is that of one company attempting to compete 
with another. To keep from losing its employees to Scribner and Resource, Waffle 
House attempted to discredit Scribner’s and Resource’s reputations.
        The 
defamatory statements made by the Waffle House executives were “based on, 
attributable to, arose out of, and/or resulted from” Waffle House’s need to 
maintain a stable work force. Scribner’s termination, therefore, was not 
causally related to the defamatory statements under the terms of the Federal 
policy. We hold that Federal’s “Employment Related Discrimination 
Exclusion” does not bar coverage under the facts of this case. We sustain 
Waffle House’s fifth and seventh issues, but only to the extent that they 
pertain to Scribner’s and Resource's claims for lost profits.
        Accordingly, 
Federal’s policy excludes coverage for damages attributable to humiliation as 
a result of Waffle House’s defamation; however, because no exclusions apply to 
either Scribner’s or Resource’s damages for lost profits, we must apply the 
“eight corners” test to determine whether Federal had a duty to defend 
Waffle House as a result of the covered allegation.
        2. 
Duty to Defend
        Scribner 
and Resource alleged that they suffered lost profits as a result of the 
defamation. Defamation is included in the definition of personal injury, and the 
policy covers occurrences resulting from personal injuries. A review of the 
allegations in Scribner’s and Resource’s complaint and Federal’s policy 
establishes that their lost profit allegations resulting from Waffle House’s 
defamation are covered by Federal’s policy. 

 Because 
 we hold that Travelers has a duty to defend Waffle House that continues through 
 the appellate process, we hold that Federal also had a duty to defend Waffle 
 House according to the terms of its policy under the Coverage A provision. We 
 sustain Waffle House’s third issue. We do not reach Waffle House’s 
 alternative argument that Federal’s Coverage B provision also provides 
 coverage for Waffle House. 


        3. 
Federal’s Duty to Indemnify
        Waffle 
House argues in its sixth issue, among other things, that Federal has a duty to 
indemnify Waffle House. Waffle House raised the issue in its second supplemental 
motion for partial summary judgment by arguing that Federal owed Waffle House a 
duty of indemnification. Because we hold that Travelers owes Waffle House a duty 
of indemnification, the employee-related exclusion does not apply, and 
Federal’s policy does not exclude coverage for Scribner’s and Resource’s 
damages for lost profits, we hold that Federal has a duty to indemnify Waffle 
House but only to the extent that the limits of the Travelers policy are 
exhausted.
        4. 
Exhaustion of Travelers’ Policy Limits
        Although 
we hold that Federal has a duty to defend and indemnify Waffle House, those 
duties are not without limitation. In its sixth issue, Waffle House argues that 
Federal’s policy does not condition indemnity upon exhaustion of the Travelers 
policy. In its motion for summary judgment, Federal argued that the limits of 
Travelers’ underlying policy have not been exhausted because Travelers 
declined coverage under its policy. Consequently, according to Federal, coverage 
under its policy has yet to be triggered. Waffle House argues that Federal’s 
motion must be denied on this ground because the policy obligates Federal to pay 
based on Waffle House’s obligation to pay a covered claim. Waffle House’s 
argument is not complete.
        The 
policy states in the section entitled “WHEN LOSS IS PAYABLE” that
 
This 
policy will NOT apply until the insured, 
or the insured’s underlying insurer is 
obligated to pay the amount of the underlying limit or Retained Limit for an occurrence 
which is also covered by this policy. When the amount of loss has finally been 
determined we will promptly pay on behalf of the insured 
the amount of loss which falls within the terms of this policy. [Emphasis 
added.]

The 
policy further states in its Coverage A provision that Federal “will pay, on 
behalf of an insured, damages in excess of the total Limits of Liability of 
Underlying Insurance as stated in the Schedule of Underlying Insurance.” 
Travelers’ general liability insurance policy is listed on the Schedule of 
Underlying Insurance, and the limit of liability is one million dollars. In 
Federal’s policy, the Coverage B provision states that Coverage B does not 
apply if Coverage A provides coverage. Accordingly, the policy clearly and 
unambiguously provides coverage under its Coverage A provision, and the 
obligation to pay does not arise until the limits of the Travelers policy have 
been exhausted. We overrule Waffle House’s sixth issue to the extent it argues 
that Federal has an obligation to indemnify Waffle House whether or not the 
limits in the Travelers policy have been exhausted.
IV. 
CONCLUSION
        Because 
we have sustained Waffle House’s first, second, and fourth issues, we reverse 
the trial court’s summary judgment for Travelers and render partial summary 
judgment for Waffle House against Travelers, holding that Travelers has both a 
duty to defend Waffle House through the appellate process and a duty to 
indemnify Waffle House for the damages arising out of the defamatory statements. 
We affirm the trial court’s judgment for Federal to the extent it holds that 
Federal has no duty to indemnify Waffle House for Scribner’s mental anguish 
damages arising from the defamatory statements. Having sustained Waffle 
House’s fifth and seventh issues in part and overruled Waffle House’s sixth 
issue, we reverse the trial court’s summary judgment for Federal to the extent 
it holds that Federal had no duty to indemnify Waffle House for Resource’s 
damages for lost profits and render partial summary judgment for Waffle House 
holding that Federal owes Waffle House both a duty of defense and 
indemnification for the Resource’s lost profits but only to the extent 
Travelers’ policy limits are exhausted. We remand the case to the trial court 
for further proceedings.
 
                                                                  LEE 
ANN DAUPHINOT
                                                                  JUSTICE
 
PANEL 
B:   DAUPHINOT, HOLMAN, and WALKER, JJ.
DELIVERED: 
July 17, 2003